542 So.2d 145 (1989)
Woodrow F. NALL, Dolores E. Nall, Individually and d/b/a Woodie's Body Shop and Wrecker Service
v.
PARISH OF IBERVILLE and Iberville Parish Sheriff's Office and Sheriff Freddie H. Pitre, Sr.
No. CA 88 0337.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Jack Patrick Harris, Baton Rouge, for plaintiff Woodrow F. Nall, et al.
Edward A. Songy, Plaquemine, for defendant Parish of Iberville, et al.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
The sole issue in this appeal is whether a parish is the employer of a deputy sheriff for purposes of imposing vicarious liability under La.Civ.C. art. 2320. The trial court concluded that it was not and dismissed plaintiffs' suit against the parish. We affirm.
On July 15, 1987, plaintiffs, Woodrow F. and Dolores E. Nall, individually and d/b/a Woodie's Body Shop and Wrecker Service, filed suit seeking damages for unfair trade practices and an invasion of privacy allegedly committed by deputy sheriffs employed by the Iberville Parish Sheriff's Office. The suit named Iberville Parish, the Iberville Parish Sheriff's Office and Freddie H. Pitre, Sr., Sheriff of Iberville Parish, as defendants. Subsequently, Iberville Parish (Parish), through the Iberville Parish Police Jury, filed a peremptory exception raising the objection of no cause of action and a motion for summary judgment. After a hearing, the trial court sustained Parish's exception and granted its motion for summary judgment. Accordingly, plaintiffs' suit against Parish was dismissed. Plaintiffs have appealed this judgment.
Whether the trial court was correct in sustaining Parish's exception and granting its motion for summary judgment turns upon the legal issue of whether Parish is vicariously liable for a tort committed by a deputy sheriff. If so, the trial court erred in both respects. However, if Parish has no vicarious liability for the tort of a deputy sheriff, both rulings of the trial court were correct.
In Foster v. Hampton, 343 So.2d 219 (La.App. 1st Cir.1977), this court held that "[t]here can be no vicarious liability on the part of the parish for the acts of the sheriff *146 or his deputies." 343 So.2d at 221.[1] Upon review, the Supreme Court affirmed and adopted the above-quoted portion of the First Circuit opinion as its own, stating in dicta that the State was the real party vicariously liable for the tort of a deputy sheriff.[2]Foster v. Hampton, 352 So.2d 197 (La.1977). Subsequently, the plaintiff in Foster filed suit against the state and in Foster v. Hampton, 381 So.2d 789 (La. 1980), the Supreme Court specifically held that the state was vicariously liable for a deputy sheriff's tort.
However, following the Supreme Court's decision in the first Foster case, the legislature passed Acts 1978, No. 318, in an apparent attempt to legislatively overrule this case. Act 318 deleted language in La.R.S. 33:1433, relied upon by the Supreme Court in the first Foster decision, which formerly gave a sheriff general immunity from tort liability except for acts committed by deputy sheriffs in compliance with a direct order of and in the presence of the sheriff. Further, this act also added La.R.S. 42:1441, which provides in pertinent part that:
"The state of Louisiana shall not be liable for any damage caused by a ... sheriff ... or public officer of a political subdivision within the course and scope of his official duties, or damage caused by an employee of a ... sheriff, ... or public officer of a political subdivision. (footnote omitted)
In Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La.1981), the Supreme Court re-examined the issue of vicarious liability for torts committed by deputy sheriffs in light of Act 318. Based on the following considerations, the court concluded that the actual employer of a deputy sheriff is the sheriff.
The sheriff, and not the state, hires and fires deputies, exercises direct and indirect supervision and control over them, fixes their time and place of work, and generally allocates their responsibility and assigns their duties. Although the money for the operation of the various sheriffs' departments may come from various sources of public funds (primarily fees as tax collector and in civil and criminal matters), the sheriffs disburse the allocated funds and actually pay most of the salaries of the deputies with these funds. No one but the sheriff can realistically be viewed as the employer of the deputies. Whether the sheriff is the appropriate governmental entity on which to impose liability for the employment-related torts of the deputy sheriff is a more difficult question.
The doctrine of respondeat superior is based on the rationale that the enterprise should pay for damages caused by one who is acting in furtherance of the enterprise. Here, there is no enterprise. The deputy on duty is acting in furtherance of the public good, and the damages caused by those actions of the deputy should be paid by public funds.

The Legislature, in enacting Act 318 of 1978, has clearly indicated its intention that governmental responsibility for torts committed by a public employee should be placed on the public officer most closely related to the tortfeasor. The Legislature also removed the previous statutory immunity enjoyed by the sheriff. Moreover, as noted in the discussion of the employment relationship, neither the state nor the parish (the other logical entities on which liability might be imposed) exercises any significant control over sheriff's deputies. We conclude that the sheriff is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff.

However, in the employment relationship which gives rise to delictual responsibility, the sheriff acts solely in his official capacity; he cannot reasonably be viewed as acting in a personal capacity in *147 the employment relationship. Therefore, if the sheriff as an employer is to be held vicariou liable for the torts of his employee, he is liable only because he is sheriff and is only liable to the extent that he holds that office. He is not liable personally, and his personal funds and property cannot be subjected to execution of a judgment decreeing that liability. 402 So.2d at 671 (footnote omitted) (emphasis added)
Accord, Vance v. Orleans Parish Crim. Sheriff's Dept., 483 So.2d 1178 (La.App. 4th Cir.1986); Sciortino v. Alfano, 435 So. 2d 1010 (La.App. 5th Cir.), writ denied, 437 So.2d 1149 (1983).
Another significant case is Martinez v. Reynolds, 398 So.2d 156 (La.App. 3rd Cir. 1981). In Martinez the court concluded that but for legislation passed subsequent to the first Foster decision, a plaintiff would clearly have a right of recovery against the state for a tort committed by a deputy sheriff. However, the Martinez court held that:
... [B]y enacting Act 318 of 1978 the legislature intended to legislatively overrule Foster v. Hampton I, ... by compelling victims of torts committed by deputy sheriffs to seek their relief from the deputies and the sheriffs who hire, control and supervise them, rather than the state, which has virtually no control over their activities. (398 So.2d at 159)
Accord, Sullivan v. Quick, 406 So.2d 284 (La.App. 3rd Cir.1981).
Thus, at this point the jurisprudence was consistent in holding that the sheriff and not the parish was vicariously liable for the tort of a deputy sheriff. The next major development affecting this issue was the enactment by the legislature of La.R.S. 42:1441.3 and 1441.4 by Acts 1985, No. 451, § 1. These provisions clearly were intended by the legislature to provide a comprehensive scheme for determining which political subdivision is the master of a public officer, official or employee for purposes of La.Civ.C. art. 2320 or other master-servant tort liability. Plaintiffs argue that the legislature intended by enactment of these provisions to make a parish the governmental entity vicariously liable for a tort committed by a deputy sheriff.
La.R.S. 42:1441.3 provides, in pertinent part as follows:
Determination of master of officer of political subdivision for purposes of Civil Code Article 2320 and other master-servant tort liability laws
A. The master of an individual who is an elected or appointed public officer, offical, or employee of a political subdivision, under the meaning and purpose of Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant, is the particular political subdivision of which such individual is a public officer, official, or employee.
B. Determinants of which political subdivision may be made liable as master for the offenses and quasi-offenses of a public officer of a political subdivision under Civil Code Article 2320 and other laws imposing such master-servant liability, shall include:
(1) The territorial jurisdiction and territorial extent of the governmental body politic comprising the electorate who usually elects such public officer, if he is elected, or who usually elects the public officer who appoints such public officer, if he is appointed as an assistant, deputy, or other representative or designee of an elected public officer, and comprising the electorate whom such public officer primarily serves; if the office which the public officer holds is in the nature of a representative capacity on a multi-member board, council, commission, jury, or other multi-member body which acts as a whole, then the territorial jurisdiction and territorial extent of such multi-member board on which such public officer serves;
(2) The source of the funds used for the operating expenses of the office in which such public officer serves; and
(3) Unless such public officer is elected directly by the electorate of the political subdivision of which he is such officer, the office of the individual who has the right to control closely the daily time *148 and physical activities of such public officer in carrying out his public duties.
C. As provided in R.S. 42:1, the term "public officer" includes anyone who holds any elective or appointive office created by constitution or law. The term is not synonymous with "state officer", as "public officer" includes not only public officers of the state but also public officers of parishes, municipalities, special districts, and other political subdivisions. While all offices created by the constitution or law are "public offices," they are not all "state offices," as they include parish offices, municipal offices, district offices, and offices of political subdivisions. A public officer may be the officer of a parish, municipality, district, or other political subdivision without being appointed by or under the direct control of the particular body which exercises the legislative functions of such parish, municipality, district, or political subdivision, in much the same manner as a public officer of the state may hold an office in the executive branch or may hold the office of a state court judgeship without being appointed by or under the direct control of the legislature. (emphasis added)
La.R.S. 42:1441.4 provides, in pertinent part, as follows:
Legislative findings and purposes
With respect to ... the master-servant tort liability provisions contained in this Chapter, the legislature finds and states that:
(1) The intent of the Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant can be found implied in the traditional interpretation and application thereof, in much the same manner as explained in Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), the same with respect to the relationships between governmental bodies politic and their respective officers and employees as it is with respect to relationships among private individuals;
(2) Such cases as Foster v. Hampton, 352 So.2d 197 (La.1977) and 381 So.2d 789 (La.1980); Mullins v. State, 387 So. 2d 1151 (La.1980), and Hryhorchuk v. Smith, 390 So.2d 497 (La.1980), represent misinterpretations and misapplications of Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant;
(3) The intent and purpose of the provisions contained in this Chapter relative thereto are to restore to the legislatively created Civil Code Article 2320 and other laws imposing such master-servant liability the true legislatively intended meaning, interpretation, and application deviated from in such relationships, circumstances, and cases as reported in Foster v. Hampton, Mullins v. State, and Hryhorchuk v. Smith, supra;
(4) The intent, purpose, and effect of such provisions in this Chapter are not to attempt a reestablishment of any governmental immunity based on the status of sovereignty of any government, but rather to correct the legislatively created substantive law, in much the same manner as such provisions were correctly interpreted and upheld in Martinez v. Reynolds, 398 So.2d 156 (La.App. 3rd Cir.1981), and Sullivan v. Quick, 406 So.2d 284 (La.App. 3rd Cir.1981);
. . . . .
Applying the guidelines of La.R.S. 42:1441(B) to this case, we observe that the territorial jurisdiction of the sheriff and the territorial extent of the electorate which elects the sheriff, who in turn hires deputy sheriffs, is the same as the geographic boundaries of the Parish. As to the second factor given, the funds used to operate the sheriff's office come from a variety of public sources, primarily fees earned by the Sheriff's Office as tax collector and in civil and criminal matters. Lastly, the sheriff is the individual who has the right to closely control the daily time and physical activities of deputy sheriffs.[3] From our examination *149 of these factors, we believe the legislature intended that the sheriff, in his official capacity, not the parish, should be the party held vicariously liable for torts committed by deputy sheriffs. This conclusion is corroborated by a review of the legislative findings and purposes detailed in La.R.S. 42:1441.4.
First, we note that La.R.S. 42:1441.4(1) indicates approval of the Court's interpretation of a master's liability for the acts of his servant as expounded in Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). In Blanchard, the court indicated that two key factors in determining whether a master or employer is liable for the torts of an employer are: 1) whether the employee is an integral part of his employer's business, and 2) whether the employee must submit to the close control of his employer regarding his physical conduct and time. Of course, there is no business enterprise involved in the instant case. Therefore, by analogy, the proper query should be whether deputy sheriffs play an integral part in fulfilling the sheriff's official duties. We find that they do. Further, the sheriff clearly has the right to closely control his deputy sheriffs as to their time and physical activities. In contrast, a parish has no power or authority to hire, fire or control the time or physical activities of deputy sheriffs. Accordingly, under the traditional interpretation presented in Blanchard, we likewise conclude that the sheriff is the governmental entity vicariously liable under La.Civ.C. art. 2320 for the tort of a deputy sheriff. Secondly, La.R.S. 42:1441.4(4) cites with approval Martinez v. Reynolds, supra and Sullivan v. Quick, supra, both of which reached the same conclusion as we have regarding the sheriff's vicarious liability for a tort committed by a deputy sheriff[4].
For the above reasons, we find the legislature did not intend by enactment of La.R. S. 42:1441.3 and 1441.4 to change the law holding that the sheriff, not the parish, is vicariously liable under La.Civ.C. art. 2320 for a tort committed by a deputy sheriff. Accordingly, the judgment appealed from is affirmed. Plaintiffs are to pay all costs of appeal.
AFFIRMED.
NOTES
[1] The same conclusion was also reached in Whatley v. State, 369 So.2d 1125 (La.App. 1st Cir.1979); Johnson v. Doe, 410 So.2d 365 (La. App. 4th Cir.1982); Brister v. Parish of Jefferson, 393 So.2d 883 (La.App. 4th Cir.1981); and, Nielson v. Jefferson Parish Sheriff's Office, 242 So.2d 91 (La.App. 4th Cir.1970).
[2] The state was not a party to the suit at this time.
[3] Regarding this conclusion, we are aware that a public officer in certain circumstances may be the officer of a particular political subdivision without being appointed by or under the direct control of that political subdivision. La.R.S. 42:1441.3(C).
[4] Additional authority for this result is evident in the arrangement in the Louisiana Constitution of the respective provisions relating to sheriffs and local government. Article six deals exclusively with the topic of local government. The fact that the provision dealing with sheriffs is not found in this article, but rather in article 5, § 27, indicates the sheriff's office was not intended to be a unit of local government.