# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-31088

United States Court of Appeals
Fifth Circuit

**FILED**
January 23, 2017

Lyle W. Cayce
Clerk

TOM HEANEY,

>            Plaintiff–Appellee,

v.

CHRISTOPHER L. ROBERTS; PARISH OF JEFFERSON,

>            Defendants–Appellants.

Cons w/16-30189

TOM HEANEY,

>            Plaintiff–Appellant–Cross-Appellee,

 v.

CHRISTOPHER L. ROBERTS,

>            Defendant–Appellee,

RONALD BLACK,

>            Defendant–Appellee–Cross-Appellant,

CITY OF GRETNA,

>            Defendant–Cross Appellant.

No. 15-31088 c/w 16-30189

―――――――――――

Appeals from the United States District Court
for the Eastern District of Louisiana

―――――――――――

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This case involves consolidated appeals by multiple parties. Plaintiff Tom Heaney was silenced and then ejected at a city council meeting in Gretna, Louisiana. He alleged that the presiding official at the meeting, Defendant Christopher Roberts, violated his rights under the First and Fourth Amendments of the Constitution as well as under the Louisiana state constitution. Heaney also argued that Defendant Ronald Black, the Gretna police officer who removed him from the meeting, violated those same constitutional rights as well as state tort law. Finally, Heaney alleged that the Parish of Jefferson ("Jefferson Parish") and the City of Gretna were vicariously liable as the employers of Roberts and Black. The district court granted in part and denied in part the Defendants' motions for summary judgment. Because there is a genuine issue of material fact as to whether Roberts is entitled to qualified immunity on the First Amendment claim, we DISMISS his interlocutory appeal. We also DISMISS Black's cross-appeal for lack of appellate jurisdiction. We AFFIRM the district court's grant of summary judgment as to the other claims.

## I. BACKGROUND

### A.    Factual Background

On September 18, 2013, Tom Heaney attended a regularly scheduled Jefferson Parish council meeting in Gretna, Louisiana. In accordance with council rules, Heaney registered to speak during the time allowed for public

2

comment. The rules allowed each registered speaker five minutes to address the council. Heaney wished to speak about the legality of council members accepting campaign contributions from contractors who had applied for and received no-bid contracts from the council. Councilman Christopher Roberts was presiding as chair of the meeting.

When Heaney had been speaking for about three minutes, he was interrupted by Roberts, who asked if he would yield the floor to the Parish Attorney, Ms. Foshee. Heaney believed that he would receive the balance of his time after Ms. Foshee finished speaking given that a prior speaker had been given the balance of her time after yielding. Ms. Foshee spoke for several minutes, expressing her opinion that the council's actions were legal. After she finished speaking, Heaney asked Roberts, "May I have my time back?" and Roberts responded, "Yes, how much time do we have?" Heaney then expressed his wish to challenge the Parish Attorney's opinion. At that point, he was interrupted again by Roberts:

Roberts: Let me, we've had this conversation before, ok?

Heaney: Are you trying to stop me from speaking?

Roberts: Well you yielded and I do have the floor . . . so . . .  I'm not going to turn this into a circus, ok? If you don't believe what Ms. Foshee's comments were—

Heaney: I—

Roberts: Let me finish. Last I checked, Ms. Foshee had a law degree hanging on the wall in her office. If you're challenging whether or not what she's saying to be accurate or not, you can go right to the elevator downstairs. The Clerk of Court's office is there, and you're welcome to file suit. This is not the forum for you to challenge the opinion of the parish attorney, ok?

No. 15-31088 c/w 16-30189

Heaney: Now if I can be able to speak—

Roberts: No, let me finish. Let me finish. Once again, I'm going to ask you, are you an attorney?

Heaney: I don't have to be an attorney to read and comprehend a decision—

Roberts: But I'm not going to sit here and have you berate the parish attorney.

Heaney: I have a decision. I have a decision by HUD that contradicts what Ms. Foshee says—

Roberts: Sir, ok. Your time's up and I'm going to ask that you be removed because you're being hostile so if you would please exit.

Heaney: I'm not being hostile.

Roberts: If you've got a problem with that, you can go downstairs . . . . This is the third time that you've tried to take issue with something . . . .

Heaney: You're trying to stop me from presenting facts that contradict Ms. Foshee. You're taking my time, and you're violating parish ordinance.

Roberts: If you'd please remove the gentleman.

Ronald Black, a police officer with the City of Gretna, responded to Roberts's request to remove Heaney from the chambers. Black approached the podium where Heaney was standing and indicated that he needed to move. Heaney stopped to hand documents to another person as he walked away up the aisle, intending to sit down for the rest of the meeting. He alleges that Black "continued to force plaintiff from the Council chambers" and that Black shoved him forward, causing him to fall to the floor. After getting up, Heaney alleges that Black "seized [him] by the arms and forcibly ejected him from the

4

chambers" into an elevator and down to the first floor. While Heaney awaited an ambulance that had been called for him, Black consulted with his supervisor about whether or not Heaney should be arrested.

## B.     Procedural Background

Heaney filed a complaint on September 12, 2014. He alleged that Roberts and Black violated his First and Fourth Amendment rights and sought damages pursuant to 42 U.S.C. §§ 1983 and 1988, as well as punitive damages. In addition, Heaney asserted that both Roberts and Black violated his right to free expression under Article I, Section 7 of the Louisiana constitution and that Black was liable in tort for false arrest, battery, and negligence under Louisiana law. Heaney also alleged that Jefferson Parish and the City of Gretna should be vicariously liable as the employers of Roberts and Black, respectively.

Black and the City of Gretna, as well as Roberts and Jefferson Parish, filed motions for summary judgment on July 28, 2015. On December 2, 2015, the district court granted in part and denied in part both motions. Specifically, the court denied Roberts's motion for summary judgment on the First Amendment and state constitutional claims. Because the state constitutional claim remains pending, Jefferson Parish remains in the lawsuit as Roberts's employer on that claim. The court also denied Black's motion for summary judgment on the state law battery and negligence claims. These tort claims remain pending against the City of Gretna on a theory of respondeat superior.[1] The court granted summary judgment on the free speech claims as to Black,

---

[1] The opinion will only refer to Roberts and Black, although both Jefferson Parish and the City of Gretna are parties to the appeals.

the Fourth Amendment claims as to Black and Roberts, the punitive damages claim, and the false arrest claim.

Roberts filed a notice of interlocutory appeal on December 21, 2015. On February 29, 2016, the district court entered a final judgment in accordance with its order pursuant to Federal Rule of Civil Procedure 54(b), finding no just reason for delay. Heaney appealed on March 4, 2016. Black appealed the denial of summary judgment on March 7, 2016. Roberts filed another notice of appeal on March 14, 2016.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over final decisions pursuant to 28 U.S.C. § 1291. While not a final decision, "the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). We have explained that when a "district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Id.* The court is first deciding that "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.* "Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Id.* We do not have jurisdiction to review the second type of determination. *Id.* Instead, "we review the complaint and record to determine whether, assuming that all of [the plaintiff's] factual assertions are true, those facts are materially sufficient to establish that defendants acted in an objectively unreasonable manner." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000). "Within this limited appellate jurisdiction, '[t]his court reviews a district court's denial of a motion for summary judgment on the basis of qualified immunity in a § 1983 suit de

novo.'" *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010) (quoting *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)).

### III. DISCUSSION

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). There are generally two steps in a qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second . . . the court must decide whether the right at issue was clearly established at time of [the] defendant's alleged misconduct." *Id.* (internal quotations omitted). However, we are not required to address these steps in sequential order. *Id.* at 242 ("Because the two-step . . . procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeal are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

In Fourth Amendment cases, determining whether an official violated clearly established law necessarily involves a reasonableness inquiry. *Id.* at 244–45. In *Pearson*, the Supreme Court explained that officer is "entitled to qualified immunity where clearly established law does not show that the [conduct] violated the Fourth Amendment," a determination which "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (internal quotations omitted). However, "a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–

19 (1982). In general, "the doctrine of qualified immunity protects government officials from . . . liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate*." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

## A.    Free Speech Claims Against Roberts

Roberts argues that he is entitled to qualified immunity on the First Amendment claim because he was acting in his official capacity as councilman for Jefferson Parish during the meeting at issue.[2] The constitutional right at issue is the First Amendment right to be free from viewpoint discrimination in a limited public forum. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (per curiam) (explaining that limited public forums "describe forums opened for public expression of particular kinds or by particular groups"). It is beyond debate that the law prohibits viewpoint discrimination in a limited public forum. *See, e.g.*, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). The government can restrict or regulate speech in a limited public forum "as long as the regulation '(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum.'" *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) (quoting *Chiu*, 260 F.3d at 346).

---

[2] Louisiana's constitutional protection of free speech mirrors that of the First Amendment, so separate determinations of the state and federal claims are unnecessary. *See Winn v. New Orleans City*, No. 12-1307, 2015 WL 10713690, at *5 (E.D. La. Jan. 14, 2015). Furthermore, as the district court determined, the Louisiana Supreme Court would recognize the same qualified immunity defense for claims under Article I, Section 7 that federal courts recognize for § 1983 First Amendment claims. Therefore, unless otherwise stated, references to Heaney's First Amendment claim refer to both the state and federal claims.

No. 15-31088 c/w 16-30189

Here, the district court denied summary judgment because a factual dispute exists as to whether Roberts's conduct was viewpoint-based. Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (noting that "a claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose"). If Heaney were to have violated a reasonable restriction, such as a topic or time constraint, there would be no constitutional violation. *See Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 435 (6th Cir. 2009) ("No violation occurs when the same result would have occurred in the absence of any illegitimate motive."). However, Heaney was speaking on an approved topic and within his allotted time.

Because Heaney was not silenced for violating a reasonable restriction, the First Amendment claim turns on Roberts's motive or intent in silencing and ejecting Heaney from the meeting. The district court declined to grant summary judgment in favor of Roberts because the "pivotal question"— whether Roberts acted on an improper motive—is a factual dispute that should be resolved by a jury. Due to that question of fact, the district court was unable to determine whether Roberts is entitled to qualified immunity. Assuming that there *was* viewpoint discrimination, the court found that Roberts did violate clearly established law and that the violation was objectively unreasonable.[3]

---

[3] Roberts argues that the district court was wrong to assume, as a factual matter, that Roberts acted with improper motive because the "test for the application of qualified immunity does not involve a look into the subjective intent of the official, but instead looks at what a reasonable official would know or think." The Supreme Court addressed the issue of unconstitutional motive in *Crawford-El v. Britton*, 523 U.S. 574 (1998). The Court

Specifically, the district court stated: "It is beyond cavil that a reasonable government official in Roberts' position would have known that it would be impermissible under the First Amendment to prevent Heaney from speaking and to eject him from the meeting based on the message he was conveying."

We agree. If Roberts acted with improper motive, he violated Heaney's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum. Because we do not have jurisdiction to review the district court's assessment that a factual dispute exists, we dismiss Roberts's appeal. *See Chiu*, 260 F.3d at 352 ("This question regarding Defendants' motivation creates a genuine issue of material fact that cannot be decided on this appeal.").

## B.    Punitive Damages Claim Against Roberts

Although the district court denied summary judgment on the First Amendment issue, the district court granted Roberts's motion for summary judgment as to punitive damages. Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Reckless indifference has been described by the Supreme Court as "'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to

---

explained that "although evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case." *Id.* at 589. While Roberts is correct that qualified immunity presents a question of law to be determined by the court, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). Indeed, *Crawford-El* recognized that that there is a "wide array of different federal law claims for which an official's motive is a necessary element" and that there should be no heightened burden on plaintiffs at the summary judgment phase to prove improper motive. *Crawford-El*, 523 U.S. at 585.

civil obligations.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation omitted). "[U]nlike compensatory damages, punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be." *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990). The decision to award or deny punitive damages is left to the finder of fact. *Id.* This Court is deferential to district court determinations regarding punitive damages. We will not necessarily reverse the district court on punitive damages, "[e]ven if a party has made a showing justifying an award of punitive damages." *Thompkins v. Belt*, 828 F.2d 298, 302 (5th Cir. 1987). That is because an "award of punitive damages is a harsh remedy and normally is not favored by law" and its goal "is to punish as well as to deter the commission of similar offenses in the future." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985).

Here, the district court was "persuaded that while the evidence could allow a reasonable jury to infer the necessary subjective intent to support a First Amendment violation, it will not permit a reasonable jury to infer the level of 'evil intent' or recklessness necessary to support a claim of punitive damages." Although in many instances a factual dispute as to a constitutional violation will preclude summary judgment on punitive damages, it will not when there is no material question of fact as to the reckless nature of the defendant's conduct. *See Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999) ("While evaluations of motive and intent are generally inappropriate on a motion for summary judgment, we have recognized an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendant's actions." (internal citation omitted)). We agree with the district court's assessment of these facts. Because there is no question that Roberts's conduct did not rise to the level of reckless indifference or evil intent, we affirm.

C.     **First Amendment Claim Against Black**

The district court did not err in granting summary judgment in favor of Black on the First Amendment claim. Heaney argues that Black is not entitled to qualified immunity on the First Amendment claim because Black is "the individual who actually effectuated the First Amendment violation by seizing and removing Heaney." Black counters that in responding to a direct order to remove an individual at a council meeting, he was not required "to make his own independent determination as to whether the individual should be removed from the meeting, whether or not [he] ha[d] knowledge of all the facts which ha[d] caused the council chair to make the request."

Heaney relies on *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), to argue that an officer who "blindly follow[s]" orders is not entitled to qualified immunity. But *Cozzo* is distinguishable. In that case, this Court denied qualified immunity to a sheriff's deputy who "was only following the orders" of a superior in evicting the plaintiff based on a temporary restraining order ("TRO") that "on its face neither state[d] nor require[d] eviction." *Id.* at 284–85. In *Cozzo*, we found that the deputy "was well aware of the cause of [the plaintiff's] concerns and the need for clarification" before carrying out the order. *Id.* at 285. This was true particularly because the plaintiff had pointed out the TRO's inaccuracies to the deputy when he came to evict her. *Id.*

A "right can be said to have been clearly established only if all reasonable officials in the defendant's position would have concluded that the challenged state action was unconstitutional." *Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844, 846 (5th Cir. 2003). Unlike the deputy in *Cozzo*, who had ample time and reasons to conclude that he was carrying out an illegal act, Black had no reason to believe that he was violating Heaney's First Amendment rights by

following Roberts's order. We agree with the district court that "Black was not required to cross-examine and second-guess Roberts regarding his First Amendment motives before acting." *See Collinson v. Gott*, 895 F.2d 994, 997 (4th Cir. 1990) (affirming qualified immunity for a sheriff's deputy who escorted a citizen out of a city council meeting upon receiving orders to do so from the presiding officer). Black is entitled to qualified immunity on the First Amendment claim because his actions as sergeant-at-arms were not objectively unreasonable in light of clearly established law. We affirm on that claim.

## D.    Fourth Amendment Claim Against Black

The district court granted summary judgment on Heaney's Fourth Amendment claims.[4] "Qualified immunity provides 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Wooley v. City of Baton Rouge*, 211 F.3d 913, 918–19 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). There is a clearly established right to be free from unreasonable seizures under the Fourth Amendment. *See, e.g.*, *Michigan v. Summers*, 452 U.S. 692, 696 (1981). But an officer is only denied qualified immunity if his or her actions are objectively unreasonable in light of clearly established law. *See, e.g.*, *Blackwell v. Barton*, 34 F.3d 298, 303–04 (5th Cir. 1994) (finding that an officer who made an arrest pursuant to a facially valid warrant acted reasonably and was therefore entitled to qualified immunity despite violating a clearly established Fourth Amendment right).

We are convinced that the interaction between Black and Heaney was a seizure under the Fourth Amendment because Heaney was forced to leave the

---

[4] Heaney has waived his Fourth Amendment argument as to Roberts by failing to argue in his original brief that the district court erred in granting Roberts qualified immunity on the Fourth Amendment claim. *See United States v. Pompa*, 434 F.3d 800, 806 n.4 (5th Cir. 2005) (citing Fed. R. App. P. 28(a)(8)(A)) ("Any issue not raised in an appellant's opening brief is deemed waived."). We therefore consider only the Fourth Amendment claim against Black.

meeting. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (explaining that a "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). However, we do not need to determine whether there was probable cause. Even "[i]f there is no probable cause to arrest, the question of whether qualified immunity nonetheless applies is a separate legal and factual issue." *Mesa v. Prejean*, 543 F.3d 264, 271 (5th Cir. 2008). "Even if we find that the right was clearly established at the time of the alleged violation . . . , a defendant will still be entitled to qualified immunity if the defendant's conduct was 'objectively reasonable in light of "clearly established" law at the time of the violation.'" *Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 614 (5th Cir. 2004) (quoting *Chiu*, 339 F.3d at 279). We assess the reasonableness of an officer's actions "in light of 'the facts available to him at the time of his action.'" *Id.* (quoting *Chiu*, 339 F.3d at 284).

Black's conduct was objectively reasonable in light of clearly established law. As previously discussed, Black fulfilled the role of sergeant-at-arms at the meeting. He was therefore responsible for responding to requests by the council president to address disruptions. Black also reasonably believed he had legal authority to keep the peace at meetings and in the building. He testified that "Court security has authority to make sure that everything is peaceful and quiet in the whole building . . . not just the Council chambers; so if there is a problem anywhere in the whole building, we can . . . ask them to leave or take other necessary action." It was therefore not objectively unreasonable for Black to respond to Roberts's request and escort Heaney out of the room or to briefly detain Heaney while consulting with his supervisor. Black is entitled to qualified immunity on the Fourth Amendment claim.

No. 15-31088 c/w 16-30189

### E.　False Arrest Claim Against Black

The district court granted summary judgment on Heaney's false arrest claim.[5] Under Louisiana law, "[i]n order for plaintiffs to recover for false arrest, they must prove that they were unlawfully detained by the police against their will." *Harrison v. Dep't of Pub. Safety & Corrs.*, 721 So. 2d 458, 461 (La. 1998). There are "two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Miller v. Desoto Reg'l Health Sys.*, 128 So. 3d 649, 655–56 (La. Ct. App. 2013) (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006)). Courts have also referred to false imprisonment as the "unlawful and total restraint of the liberty of the person." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1136 (5th Cir. 2014) (quoting *Crossett v. Campbell*, 48 So. 141, 143 (1908)).

The district court found that probable cause was not required because "Heaney was not formally arrested and the only detention that occurred as part of the removal took place after Black removed Heaney from the council chambers when Black was conferring with his supervisor to determine whether Heaney should be placed under arrest." As an initial matter, Heaney never alleged in his complaint that he was detained by Black after leaving the chambers, and he appeared to base his false arrest claim only on the exchange *during* the meeting. In his deposition, Heaney admitted that he had not been arrested and was not questioned by Black. Black stated in his deposition that he had taken Heaney downstairs because he wanted to discuss with his supervisor whether Heaney should be arrested. Black explained that this was because security officers can "arrest somebody for disturbing the peace or ask

---

[5] As Heaney points out in his brief, the district court granted summary judgment on the false arrest claim in favor of both Black and Roberts, but Heaney never asserted the false arrest claim against Roberts.

No. 15-31088 c/w 16-30189

him to leave. And if he doesn't leave, then [they can] arrest him." After removing him from the meeting, Black escorted Heaney downstairs, Heaney sat outside the office for a brief period while Black consulted with his supervisor, and Heaney then walked to an ambulance without being escorted.

This encounter does not amount to a detention requiring probable cause under Louisiana law. *See Harrison*, 721 So. 2d at 461–64 (finding that officers who detained individuals at a casino to interrogate them about possible cheating were only making an investigatory stop and did not need probable cause). Black's detention was brief and reasonable. Heaney was also free to walk to the ambulance when it arrived. We therefore affirm the district court's grant of summary judgment on the false arrest claim.

## F.    Battery and Negligence Claims Against Black

This Court lacks jurisdiction to review the district court's denial of summary judgment as to Heaney's battery and negligence claims against Black. The district court denied summary judgment because it "agree[d] with Heaney's assertion that the jury must determine whether Black was at fault for injuring Heaney." Although the district court entered a final judgment pursuant to Rule 54(b), that certification does not grant appellate jurisdiction over a denial of summary judgment. *See Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016) ("A district court may certify its judgment as final . . . only with respect to claims that have been conclusively resolved."), *petition for cert. filed*, (U.S. Nov. 4, 2016) (No. 16-631).

### IV. CONCLUSION

In conclusion, we DISMISS Roberts's appeal on the First Amendment claim because there is a material fact issue as to whether there was viewpoint discrimination. We AFFIRM the district court's denial of punitive damages. We AFFIRM the district court's grant of summary judgment in favor of Black

16

on the First Amendment claim and the Fourth Amendment claim. We AFFIRM the district court's grant of summary judgment in favor of Black on the false arrest claim and DISMISS Black's cross-appeal on the state tort claims for lack of jurisdiction.