HOLDRIDGE, J.
*10 Plaintiff/appellant, Don Ortega appeals a trial court judgment denying his petition for injunction and writ of mandamus against defendants/appellees, The Recreation and Parks Commission for the Parish of East Baton Rouge[1] (BREC) and Superintendent Carolyn McKnight, chief executive officer of BREC, for restricting him from attending BREC meetings held on its properties due to his threatening and disruptive conduct following his termination of employment.[2] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Ortega was terminated from his employment with BREC on December 31, 2015, due to his improper behavior with employees and insubordination towards his supervisors. As a result of his termination, Ortega made threatening remarks to BREC supervisors and employees on BREC's premises. Ortega struck a BREC employee with his uniform shirt and told another BREC employee that he was "going to have fun with [them]. [They didn't] even know." Following his termination, BREC had to contact the Baton Rouge Police Department twice due to Ortega's hostile and threatening behavior on its premises.
On January 14, 2016, BREC sent Ortega a letter instructing him that because of his threatening behavior after his termination, he was banned from entering all BREC properties and facilities indefinitely. Ortega appealed his termination to the BREC Peer Review Committee and the BREC Human Resources Complaint Resolution Committee. Both committees upheld his termination.
On March 31, 2016, McKnight sent Ortega a letter notifying him that "in accordance with BREC's letter [dated] ... January 14, 2016 ... [his] ban from entering all BREC properties and facilitates indefinitely [was] ... reinstated and effective immediately. The letter further stated that "[a]ny violation of [the] ban [would] result in [BREC's] immediate contact of the police and [Ortega would] be subject to arrest for trespassing[.]"
On July 5, 2016, Ortega filed a "Petition for Injunction And For Writ of Mandamus" naming BREC and McKnight as defendants. In his petition, Ortega requested that the trial court issue a preliminary injunction ordering BREC to remove its restriction prohibiting him from attending and participating in public meetings held on BREC's properties and asked that after due proceedings, the injunction be made permanent. Ortega further requested that a writ of mandamus be issued that directed McKnight to allow him to attend and express his views at BREC's public meetings. In response, the defendants filed an opposition to Ortega's petition, listing in detail his history of disruptive incidents.
*11 The opposition stated that in November 2013, Ortega was arrested and charged with unauthorized entry into a business and criminal trespass after violently entering the business to make a complaint. On September 30, 2014, the Baton Rouge Police Department was contacted regarding Ortega's suspicious behavior when he was observed to be allegedly taking pictures of children walking around a church synagogue property. When Ortega was questioned about his behavior by the reporter of the incident he became irritated.
Additionally, the defendants attached exhibits detailing the reasons for Ortega's discharge from BREC, which stated that he exhibited improper behavior with fellow employees as well as creating a hostile and unsafe work environment. An employee of BREC submitted an incident report about Ortega, stating "in my 25 years as a BREC employee I have never seen a person who was so cold and ruthless toward fellow employees as Don Ortega was. His attitude ... toward his fellow employees ma[de] it impossible to work in this or any other organization."
On July 5, 2017, the parties submitted a joint stipulation of facts and exhibits. The stipulation of facts revealed that Ortega had been arrested in Colorado for damaging public property and had a history of carrying firearms into public meetings in Colorado. The stipulation of facts further revealed that on September 20, 2016, Ortega underwent a psychological evaluation administered by an independent medical examiner, Dr. Brandon P. Romano, a clinical psychologist. The results of the psychological evaluation were as follows:
Mr. Ortega's truthfulness scale score [was] in the problem risk range and all scale scores [were] truth-corrected for accuracy.
His profile suggest[ed] a propensity for physical, emotional, and verbal aggression. He appear[ed] to harbor a great deal of poorly repressed resentment, anger, and violence. When upset, his emotions easily interfere[d] with his [judgment]. His remaining scales fell within the low risk range.
* * * *
He tend[ed] to be emotionally excitable and intensely zealous. He [was] as prone to present with a high degree of animation as he [was] to evince hot-headedness. Unrestrained and rash, he [was] often restless and indefatigable. His tirelessness d[id] not necessarily result in effective achievements, however, and may turn to turbulence; he may become socially obdurate, inappropriate, and potentially caustic and assaultive.
* * * *
Although Mr. Ortega d[id] not verbalize a history of attitudes supporting violence or aggression, he ha[d] a history of verbal interactions and physical altercations that c[ould] be viewed as intimidating, threatening, harassing, and otherwise concerning. He appear[ed] to have taken on the role of "policing" society although the same rules and laws that govern others d[id] not seem to apply to him. Although he ha[d] not verbally identified or targeted a particular person, group, or organization for violence or aggression, his objective data suggest[ed] a propensity for emotional and behavioral outbursts; this, combined with self-righteousness, poor insight and judgment, and other psychosocial risk factors, could certainly lead to a fatal outcome for others, or alternatively, Mr. Ortega in the event an altercation escalate[d] and he bec[ame] a victim.
The stipulation of facts included Ortega's deposition taken on October 25, 2016. In his deposition, Ortega stated that he had been arrested approximately fifteen times. Ortega further stated that he had *12 disciplinary issues during his military service, as well as when he resided in Colorado where he was arrested for trespassing in a hospital while carrying a firearm.
On August 11, 2017, Ortega's claims came before the trial court. The parties agreed to submit the matter on briefs, together with the joint stipulation of facts and exhibits for the trial court to rule on the merits of Ortega's claims. The trial court gave an oral ruling, denying Ortega's claims without prejudice. The trial court signed a judgment on August 21, 2017, dismissing the petition of Ortega. From that judgment, Ortega appeals assigning as error that the trial court erred in allowing BREC to restrict him from attending and participating in its public meetings, violating the United States and Louisiana Constitutions and the Open Meetings Law.[3]
DISCUSSION
Ortega argues that the First Amendment of the United States Constitution and Article I, Section 7 of the Louisiana Constitution provides him with the fundamental right to attend and express his views at BREC's public meetings.[4] The First Amendment of the United States Constitution and Article 1, Section 7 of the Louisiana Constitution protect freedom of speech and expression. State v. Hernandez, 503 So.2d 1181, 1185 (La. App. 3rd Cir. 1987). The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble." U.S. Const. amend. I. Article I, Section 7, of the Louisiana Constitution also protects the right of free speech, stating, "[n]o law shall curtail or restrain the freedom of speech or of the press."
In assessing whether an individual's rights have been violated under the First Amendment, it must first be determined which type of public forum the regulation in question seeks to direct, as the forum classification determines the appropriate standard to be applied. See Fairchild v. Liberty Independent School Dist., 597 F.3d 747, 757 (5th Cir. 2010). There are three recognized types of forums: (1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums. In traditional and designated public forums, reasonable time, place, and manner restrictions are allowed; however, any content-based restriction must be narrowly tailored to serve a compelling government interest. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469, 129 S.Ct. 1125, 1127, 172 L.Ed.2d 853 (2009). In limited public and nonpublic forums, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral. Id at 470, 129 S.Ct. 1125.
Because BREC's properties are government properties in accordance with La. R.S. 33:4570, et seq. , the meeting at issue constitutes a limited public forum.[5]
*13 See Chiu v. Plano Independent School Dist., 260 F.3d 330, 346 (5th Cir. 2001) (per curiam) (limited public forums "describe forums opened for public expression of particular kinds or by particular groups"); see also Mesa v. Hudson County Bd. of Chosen Freeholders, CIV. A. 2009-3576 KSH, 2011 WL 4592390, *5 (D.N.J. 2011) (a governmental entity creates a limited public forum when it provides for a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects). Common examples of limited public forums include city council meetings, state university meeting facilities opened for student groups, and open school board meetings. See American Freedom Defense Initiative v. Metro. Transp. Authority, 880 F.Supp.2d 456, 470, n.6 (S.D.N.Y. 2012) ; Wenthold v. City of Farmers Branch, Texas, 3:11-CV-0748-B, 2012 WL 467325, *8 (N.D. Tex. 2012).
Restrictions on speech in a limited public forum are subject to less stringent scrutiny than the other forums.[6] See Good News Club v. Milford Central School, 533 U.S. 98, 106, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001). A State is not required to and does not allow persons to engage in every type of speech in a limited public forum, and it may be justified in reserving the forum for certain groups or for the discussion of certain topics. Id. The government can restrict or regulate speech in a limited public forum if the regulation (1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum. Heaney, 846 F.3d at 801-02 ; Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School Dist., 640 F.3d 329, 334 (8th Cir. 2011), cert. denied, 565 U.S. 1036, 132 S.Ct. 592, 181 L.Ed.2d 424 (2011).
Viewpoint discrimination occurs when the specific motivating ideology, opinion, or perspective of the speaker form the content of the restriction. See Reed v. Town of Gilbert, Ariz., --- U.S. ----, 135 S.Ct. 2218, 2230, 192 L.Ed.2d 236 (2015). BREC's restriction on Ortega is not based upon his viewpoints and Ortega has not argued otherwise. In regard to reasonableness, the restriction on access must be reasonable in light of the purpose which the forum at issue serves. Victory Through Jesus Sports Ministry Foundation, 640 F.3d at 335. There is no requirement that a restriction in a limited public forum be narrowly tailored or the government's interest be compelling for a restriction to be reasonable. So long as the government can reasonably justify its regulation on speech in the limited public forum in light of the purposes of the forum, the regulation passes constitutional muster. Flint v. Dennison, 488 F.3d 816, 835 (9th Cir. 2007), cert. denied, 552 U.S. 1097, 128 S.Ct. 882, 169 L.Ed.2d 726 (2008). Thus, restrictions on speech that will foreseeably disrupt the intended function of government property have generally been held reasonable in limited public forums.
*14 Seattle Mideast Awareness Campaign v. King County, 781 F.3d 489, 500 (9th Cir. 2015)
The trial court determined that BREC's restriction imposed on Ortega was reasonable and view-point neutral in light of the facts of this case. Specifically, the trial court stated in its oral reasons:
... The stipulated facts entered show that Mr. Ortega ha[d] a very long history of what th[e] Court deems to be both erratic and threatening behavior. The police were contacted at least twice by BREC and once, if not twice, by Baton Rouge Water Company based on the actions of Mr. Ortega. And in his interview with Dr. Romano, he indicated he [was] ... arrested, over the course of his adult life, approximately 15 times. There were also some discipline issues regarding his military service and occasions when he resided in Colorado where he brought firearms to public events. Based on the facts stipulated to, the Court ha[d] some real concern regarding Mr. Ortega as well as the safety and welfare of BREC employees and members of the general public who [were] also at the BREC facilities.... Dr. Romano expressed some real concerns regarding the truthfulness of Mr. Ortega in his responses as well as the fact that his profile suggest[ed] a propensity for physical, emotional, and verbal aggression. He appear[ed] to harbor a great deal of poorly repressed resentment, anger, and violence.... The report of Dr. Romano causes[d] th[e] Court grave concern regarding the potential violent tendencies Mr. Ortega ha[d] displayed and potentially could display if allowed back on BREC properties. No question in the Court's mind pursuant to Revised Statute Title 33 Section [4570.3], BREC ha[d] the power and authority as well as a compelling legitimate interest and right to take action to ensure peacefulness at [its] facilities, to protect the safety and welfare of not only the employees but of members of the general public to use the BREC facilitates.... In summary, it [was] the Court's opinion that BREC's actions, based on the facts of this case, are reasonable and substantive relations to the health safety and general welfare of the public and [its] employees, and they [were] clearly within the valid exercise of the power and authority statutorily invested.... The Court ... note[d] that the dismissal [was] ... without prejudice. And the Court's decision in that regard [was] based upon the premise in Dr. Romano's report that, should [Mr. Ortega] seek and obtain counseling and address these issues, he would not be precluded from petitioning the Court at a future date to have BREC either lift or modify the restriction.
The trial court determined from Dr. Romano's assessment of Ortega and his history of disruptive behavior that BREC's restriction placed on him was reasonable and view-point neutral in regard to the facts of this case. The government may impose content-based restrictions on speech as a means of insuring peace and avoiding controversy that would disrupt the business of the forum. Seattle Mideast Awareness Campaign, 781 F.3d at 502. Considering Ortega's disruptive background and violent history, we find that the trial court correctly upheld BREC's restriction to prevent a potentially dangerous situation that would be harmful to BREC's employees and/or the public. Therefore, we find that BREC's restriction does not violate Ortega's First Amendment Rights. We note that the trial court's judgment does not restrict Ortega permanently from attending BREC's meetings. The trial court narrowly-tailored its judgment to be without prejudice. Thus, Ortega is not precluded from petitioning to the *15 court at a future date to have BREC lift or modify its restriction if he takes the appropriate steps to address the issues stated herein.[7] This assignment of error has no merit.
In his second assignment of error, Ortega argues that BREC's restriction is in violation of the Open Meetings Law, La. R.S. 42:11 et seq. Ortega argues that he has a fundamental right to attend BREC meetings under the Open Meetings Law and that BREC only has the right to eject him from a meeting if he willfully disrupts the meeting.
Article XII, Section 3 of the Louisiana Constitution states that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." The primary purpose of this constitutional provision insuring the right of citizens to observe the deliberations of public bodies is to protect citizens from secret decisions made without any opportunity for public input. Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary, 2001-1951 (La. App. 1st Cir. 12/28/01), 805 So.2d 400, 409, writ denied, 2002-0322 (La. 4/19/02), 813 So.2d 1083. To fulfill the purposes of Article XII, Section 3 of the Louisiana Constitution, the legislature enacted the Open Meetings Law, La. R.S. 42.12 et seq. , which requires that every meeting of any public body shall be open to the public unless closed pursuant to La. R.S. 42:16, allowing executive sessions. Id.
While the Louisiana Supreme Court in Title Research Corporation v. Rausch, 450 So.2d 933, 936 (La. 1984), characterized the right under Article XII, Section 3 of the Louisiana Constitution as a fundamental right, it acknowledged that the right was subordinate when a law, specifically and unequivocally, provides otherwise. This prioritization simply does not comport with that associated with a fundamental and inalienable constitutional right. St. Mary Anesthesia Associates, Inc. v. Hospital Service Dist. No. 2 of Parish of St. Mary, 2001-2852 (La. App. 1st Cir. 12/20/02), 836 So.2d 379, 386-87, writ denied, 2003-0220 (La. 3/28/03), 840 So.2d 577. The avowed purpose of Article XII, Section 3 of the Louisiana Constitution was to establish a general constitutional right of public access to deliberations of public bodies and to public records. Id. at 383. This general right was expressly qualified. The legislature is clearly empowered to fashion exceptions in cases established by law that are in the public interest. See Id. at 387.
Louisiana Revised Statutes 33:4570.3(A) provides that BREC "is invested with full power to adopt and promulgate rules and regulations within the scope of this Section to apply to its own governmental functions, and to control and regulate the public recreational and park facilities under its jurisdiction." This power, otherwise known as a police power, is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace or general welfare. City of Shreveport v. Curry, 357 So.2d 1078, 1081 (La. 1978). The test of whether an ordinance or regulation is a constitutionally valid exercise of police power depends on whether, under all circumstances, the regulation is reasonable and whether it is designed to accomplish a purpose properly falling within the scope of the police power.
*16 Boudreaux v. Larpenter, 2011-0410 (La. App. 1st Cir. 6/1/12), 110 So.3d 159, 168.
In evaluating BREC's restriction on Ortega, the trial court stated in its reasons for judgment that the restriction did not violate the Open Meetings Law because BREC "ha[d] a right and an interest to protect its employees and the general public[.]" We agree with the trial court that due to Ortega's disruptive history of threatening behavior with BREC's employees and supervisors, as well as the results from Dr. Romano's psychological evaluation and Ortega's criminal history, that BREC had a reasonable basis to believe that his presence at any of its facilities could be potentially harmful to the general public. Thus, BREC's restriction on Ortega was a valid exercise of its police power mandated by Louisiana Revised Statutes 33:4570.3, et seq. and was not unreasonable considering the circumstances of this case. The restriction is further reasonable in light of the trial court's judgment which tailored its judgment to be without prejudice to allow Ortega to petition BREC or the court at any further date to have the restriction lifted or modified in accordance within the circumstances. Therefore, we find that BREC's restriction on Ortega does not violate Louisiana's Open Meetings Law or Section 3, Article XII of the Louisiana Constitution. This assignment of error has no merit.
CONCLUSION
For the above reasons, we affirm the trial court's August 21, 2017 judgment. All costs of this appeal are assessed to Don Ortega.
AFFIRMED .
Higginbotham, J. concurs

BREC is a political subdivision of the State of Louisiana authorized and empowered by La. R.S. 33:4570, et seq. to own and administer parks and recreational properties within the Parish of East Baton Rouge.

It is improper to cumulate a petition for writ of mandamus with a petition for permanent injunctive relief since a petition for a writ of mandamus is a summary proceeding and a petition for permanent injunctive relief is an ordinary proceeding. See La. C.C.P. arts. 462, 2592(6). However, since defendants failed to file a dilatory exception raising the objection of improper cumulation, the objection is waived. See La. C.C.P. art. 926(A)(7) & (B).

Ortega does not appeal the denial of the writ of mandamus. A writ of mandamus will only be issued when a public official has no discretion in performing a ministerial duty required by law. See La. C.C.P. art. 3863. In this case, it is clear that McKnight had the discretion to prohibit a person from attending a public meeting who may be harmful to others.

Louisiana's constitutional protection of free speech mirrors that of the First Amendment of the United States Constitution, so separate determinations of the state and federal claims are unnecessary. Heaney v. Roberts, 846 F.3d 795, 801, n.2 (5th Cir. 2017). Therefore, unless otherwise stated, references to Ortega's First Amendment claim refer to both the state and federal claims. See Id.

See also Seattle Mideast Awareness Campaign v. King County, 781 F.3d 489, 497 (9th Cir. 2015) which states that "if the property is used primarily as part of a government-run commercial enterprise, and the expressive activities the government permits are only incidental to that use, that fact tends to support finding a limited public forum."

Although not assigned as an error in his brief, Ortega argues that the trial court failed to use the strict scrutiny standard in determining that his right to attend BREC's public meetings was his fundamental right. However, jurisprudence provides that limited public forums such as BREC are not held to the strict scrutiny standard, but instead the restriction must only be content-neutral and reasonable. See Brown v. City of Jacksonville. Fla., 3:06-CV-122-J-20MMH, 2006 WL 385085, at *3 (M.D. Fla. 2006) (providing that a content-neutral ordinance or restriction is one that does not restrict either a particular viewpoint or any subject matter that may be discussed.)

We further note that the trial court's judgment does not appear to be a permanent injunction. Since this issue was not raised by either party, we decline to address whether this was a preliminary injunction and whether the appeal was timely filed in accordance with La. C.C.P. art. 3612.