# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 26, 2022

Lyle W. Cayce
Clerk

No. 20-20530

Canada Hockey, L.L.C., doing business as Epic Sports; Michael J. Bynum,

*Plaintiffs—Appellees*,

*versus*

Brad Marquardt,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-181

ON PETITION FOR REHEARING

Before Owen, *Chief Judge*, Smith and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20530

IT IS ORDERED that the petition for rehearing is DENIED. The opinion, filed September 8, 2021, is WITHDRAWN, and the following is SUBSTITUTED:

Michael J. Bynum and his publishing company sued Texas A&M University and its employees after they published a part of Bynum's forthcoming book without permission. Relevant here, the district court denied summary judgment for Brad Marquardt, a Texas A&M employee. We DISMISS for lack of jurisdiction.

## I. Background

For purposes of this appeal, we accept the factual allegations stated in the complaint as true. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Michael J. Bynum is a sportswriter and editor that operates his own publishing company, Canada Hockey LLC d/b/a Epic Sports ("Epic Sports"). In 1980, Bynum became interested in the "12th Man" lore while working on his first book about Texas A&M University's (TAMU) football program. Plaintiffs describe the 12th Man story as follows:

> The University's now famous 12th Man tradition was inspired by the actions of E. King Gill at the 1922 football game known as the "Dixie Classic." Gill, a squad player for A&M's football team, who was already training with the university's basketball team, was up in the press box watching his team face the then top-ranked Prayin' Colonels of Centre College, when he was waved down to the sideline before halftime to suit up in case his injured team ran out of reserve players. Gill stood on the sideline, ready to play, for the remainder of the game.
>
> Gill's commitment to step up for his team when in need later became a legend that was passed down from generation to generation of Aggies. Today, the 12th Man tradition is a symbol of the Aggies' unity, loyalty, and willingness to serve when

2

No. 20-20530

called upon to do so, and is woven into many aspects of life at A&M.

In 1990, TAMU registered "12th Man" as a trademark and has since aggressively enforced it.

Intrigued by the story, Bynum decided to write about Gill and his impact on TAMU's football program for a forthcoming book titled *12th Man*. For many years, Bynum researched Gill and the 12th Man story, including reviewing primary documents, visiting relevant locations, and conducting interviews with personnel in TAMU's Athletic Department, including Brad Marquardt, an Associate Director of Media Relations. Eventually, Bynum hired Whit Canning to write a short biography about Gill (the "Gill Biography"), titled "An A&M Legend Comes to Life," which Bynum planned to use as the opening chapter of his book.

In June 2010, Bynum emailed Marquardt seeking photographs to include in his book, sending along a draft of the book in PDF form. In the email, Bynum specified that the PDF was "a draft version of the 12th Man Book" and "a work in progress . . . not in final form yet." The draft contained Bynum's name, copyright date, an indication that Epic Sports owned the copyright to the book, and a statement that "no part of the book may be reproduced or used in any form or by any means . . . without the permission of the publisher." The Gill Biography was the opening chapter of the book. Bynum continued to email Marquardt as late as December 2013, asking questions related to the book. Bynum planned to publish his *12th Man* book in the fall of 2014.

In January 2014, TAMU's Athletic Department directed its staff to find background information on Gill that could be used to promote the 12th Man story and raise money. Marquardt directed his secretary to retype the Gill Biography that Bynum sent to Marquardt in 2010; remove any references

No. 20-20530

to Bynum or Epic Sports; rewrite the byline to read "by Whit Canning, special to Texas A&M Athletics" to suggest that Canning was commissioned to write the Biography exclusively for the Athletic Department; and change the original title of the Biography from "An A&M Legend Comes to Life" to "The Original 12th Man." Marquardt provided the retyped Biography to his work colleagues.

Soon after, the Athletic Department published the contents of the Gill Biography as an article on its website. Then, on January 19, 2014, both TAMU and its Athletic Department tweeted a link to the article on their respective Twitter accounts. The posts were retweeted and discussed by news sources. The article was also featured on the TAMU Times' e-newsletter and website.

On January 22, 2014, Bynum emailed Marquardt and another employee of the Athletic Department requesting immediate removal of the article. Several hours later, Marquardt responded that the article was no longer on the website, apologized for the "mix-up," and asked whether it would "be possible to post the story as an 'excerpt' to [his] book." He also stated: "I asked my secretary to key [the Biography] in for me which she did." Though the article was removed, it was shared by others and reposted on various online forums. The book remains unpublished.

In 2017, Bynum and Epic Sports filed suit against the TAMU Athletic Department, the TAMU 12th Man Foundation, and employees of the Athletic Department, including Marquardt. Relevant here, Plaintiffs assert against Marquardt direct and contributory copyright infringement claims under the Copyright Remedy Clarification Act (CRCA), 17 U.S.C. § 501,[1] as

---

[1] A direct copyright infringement claim stems directly from the CRCA, but a contributory claim does not. Nevertheless, though "[the CRCA] does not expressly render anyone liable for infringement committed by another, these doctrines of secondary liability

well as a claim under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202.

Marquardt moved to dismiss the claims on qualified immunity grounds, which the district court denied. After discovery, Marquardt moved for summary judgment, as did Plaintiffs. The district court denied both motions for summary judgment, concluding that genuine issues of material fact exist as to whether Plaintiffs obtained a valid copyright in the Gill Biography. Marquardt appeals. The district court certified the appeal as frivolous.

## II. Jurisdiction

Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291. *Gobert v. Caldwell*, 463 F.3d 339, 344 (5th Cir. 2006). However, a district court's denial of summary judgment on the basis of qualified immunity is immediately appealable under the collateral order doctrine, to the extent that it turns on a matter of law. *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015). "When a district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Heaney v. Roberts*, 846 F.3d 795, 800 (5th Cir. 2017) (internal quotation marks and citation omitted). These determinations are: (1) a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law; and (2) a genuine issue of fact exists regarding whether the defendant did, in fact, engage in such conduct.

---

emerged from common law principles and are well established in the law." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal quotation marks and citations omitted).

*Id.* We lack jurisdiction to review the second type on interlocutory appeal. *Id.* In other words, "we cannot challenge the district court's assessments regarding the sufficiency of the evidence—that is, the question whether there is enough evidence in the record for a jury to conclude that certain facts are true." *Trent*, 776 F.3d at 376 (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc)).

Although we lack jurisdiction to resolve "the genuineness of any factual disputes," we do have jurisdiction to determine "whether the factual disputes are material." *Kovacic v. Villarreal*, 628 F.3d 209, 211 n.1 (5th Cir. 2015). "So, we review the complaint and record to determine whether, assuming that all of [the plaintiff's] factual assertions are true, those facts are materially sufficient to establish that defendants acted in an objectively unreasonable manner. Even where . . . the district court has determined that there are genuine disputes raised by the evidence, we assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim . . . under these circumstances." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).

We give *de novo* review to the legal issues relating to qualified immunity. *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016).

## III. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To establish that qualified immunity does not apply, the plaintiff must prove that the state actor (1) violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *King*, 821 F.3d

at 653. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Marquardt argues that the district court erred in denying summary judgment on the basis of qualified immunity for both the copyright infringement and DMCA claims. We address each claim in turn.

## A. Copyright Infringement

In denying Marquardt's motion for summary judgment, the district court rejected his qualified immunity defense to the copyright infringement claims, concluding that a genuine issue of fact exists as to the ownership of the copyright in the Gill Biography. On appeal, Marquardt argues that he is entitled to qualified immunity because Plaintiffs cannot prove that he violated their statutory right—that is, Plaintiffs cannot show that they owned the copyright at the time of the alleged violation.

A copyright vests initially in the author of the work, unless the work is "made for hire," in which case the ownership of the copyright vests initially in the employer or commissioner of the work. 17 U.S.C. § 201(a) & (b). According to Marquardt, Plaintiffs did not enter a valid work for hire agreement with Canning and therefore did not own the copyright when the violation occurred. He contends that Bynum's declaration averring otherwise is not sufficient to prove that the arrangement was a work for hire. Further, because Plaintiffs cannot produce the original contract from 1997 (when the agreement was allegedly made) and have only produced a written agreement created a month *after* the copyright violation occurred, no reasonable factfinder could find the copyright initially vested in Bynum in a work for hire relationship.

No. 20-20530

This is a classic argument that the factual dispute is not genuine, over which we lack jurisdiction. Indeed, Marquardt's attack on the district court's conclusion that a genuine issue of fact exists over the ownership of the copyright mirrors his arguments made before the district court, which held:

> Defendant's motion [for summary judgment], which is based on his contention that Plaintiffs did not acquire the rights to the Canning article (the subject matter of this suit) until February 5, 2014—a month after the alleged infringement—is controverted by Bynum's own declaration that he had obtained those rights years earlier. Bynum avers that Canning was hired to write the article about E. King Gill in the late 1990s and that he or his company have always owned the rights to it since as early as 1997 or 1998. This raises a fact issue. The fact that Bynum cannot locate the actual written contract may prove fatal in front of the jury, but it does not diminish the fact that his own declaration raises a fact issue. Additionally, a copy of the actual Canning article that Defendant possessed is attached to his declaration and it demonstrates on the first page that one of the Plaintiffs has a 1998 copyright. While the Canning affidavit would provide additional support for this claim, an issue of material fact exists with it or without it.

Marquardt's challenge of the denial of summary judgment on the copyright infringement claims goes to the genuineness of the factual dispute, not its materiality, and we therefore dismiss this part of the appeal for lack of jurisdiction.

**B. DMCA**

Next, Marquardt argues that he is entitled to qualified immunity with respect to the DMCA claim because Plaintiffs' statutory right was not "clearly established" at the time of the alleged violation. The DMCA prohibits unauthorized removal or alteration of "copyright management information," such as the title, the author, or copyright owner of the work.

17 U.S.C. § 1202(c). Marquardt contends that it was not clearly established at the time of the alleged violation that the information removed from the Gill Biography was "copyright management information" protected by the DMCA.

We decline to consider the merits of Marquardt's qualified immunity defense against the DMCA claim because it is untimely. Marquardt first raised his defense in a motion to dismiss, which was rejected by the district court. Marquardt did not appeal the ruling, but raised qualified immunity again at summary judgment, noting that "the weakness of Plaintiffs' arguments that they own the copyright in the first place are now apparent," such that there was no clearly established right at the time of the alleged violation. Now, in the instant appeal of the denial of summary judgment, he seeks appellate review of the district court's prior ruling on his motion to dismiss, contending that the motion-to-dismiss denial is "merged into" the summary judgment denial.

Not so. A district court's denial of a motion to dismiss on the basis of qualified immunity is a final appealable decision within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (making clear that an appeal is available from denials of an immunity defense at *both* the pleading and summary judgment stages). The denial is subject to the 30-day time limit for appeal. FED. R. APP. P. 4(a)(1)(A). Therefore, Marquardt had 30 days after the district court denied his motion to dismiss to file a notice of appeal. Having failed in this, Marquardt now attempts to revisit the identical qualified immunity argument on appeal via his summary judgment motion, which, notably, is premised upon the "weakness of Plaintiffs' arguments" and not the absence of triable issues of fact. This approach is improper. *See Armstrong v. Tex. State Bd. of Barber Examiners*, 30 F.3d 643, 644 (5th Cir. 1994) (dismissing as untimely appeal of summary judgment denial, where

defendants raised the same pleadings-based qualified immunity defense in both the motion to dismiss and motion for summary judgment, but failed to appeal prior denial of the motion to dismiss).

We conclude that, for purposes of this appeal, Marquardt lost his right to challenge the denial of qualified immunity against the DMCA claim, because it is premised upon the same arguments as his non-appealed motion to dismiss. Accordingly, we dismiss this part of the appeal for lack of jurisdiction due to untimeliness. *See Sudduth v. Tex. Health & Human Servs. Comm'n*, 830 F.3d 175, 177 (5th Cir. 2016) ("It is well established 'that the timely filing of a notice of appeal in a civil case . . . is a jurisdictional requirement.'") (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007)).

## IV. Conclusion

For the foregoing reasons, we DISMISS the appeal for lack of jurisdiction.